HARVEY DEAN et al., Appellees, v. FAY WRIGHT DRAINAGE DISTRICT et al., Appellants.

**DRAINS:** Establishment—Impossible Project.  The setting aside by the district court of an order by the board of supervisors establishing a drainage district is proper when it is made to appear that

the project is impossible,—when the sum total of the plan would be to redeem certain lands and unavoidably submerge other lands.

Headnote 1:   19 C. J. p. 663.

*Appeal from Mills District Court.*—O. D. WHEELER, Judge.

DECEMBER 15, 1925.

PROCEEDINGS for the establishment of a drainage district. A district was established by order of the board of supervisors of Mills County. Upon appeal to the district court, such order was reversed and set aside. From the order of the district court, the petitioners for the district have appealed.—*Affirmed.*

*C. E. Dean* and *Cook, Cook & Cook,* for appellants.

*W. S. Lewis,* for appellees.

EVANS, J.—The district in question is known in the record as the "Fay Wright Drainage District." Its principal objective is to carry the waters of the "Mickelwait Branch," and to discharge the same over a short course into the Missouri River. The "Mickelwait Branch" is a watercourse which has its source in the highlands lying to the east of the Missouri bottoms. This drains a watershed of about seven square miles of tilled lands. It discharges its waters at the foot of the bluffs at a point five or six miles distant from the Missouri River. From the point of such discharge, the water follows no well defined course, but is spread out over the low grounds next to the bluffs, with a sluggish course southerly and southwesterly toward the Missouri River, which is its ultimate destination. The territory comprised within the proposed drainage district consists of the lands lying between the foot of the bluffs and the Missouri River. It is a characteristic of this area that a ridge of comparatively high lands extends northerly and southerly and substantially parallel with the face of the bluffs to the east thereof. The elevation of this ridge is three or four feet higher than the lands lying to the east thereof between it and the bluffs. This elevation protects this ridge land against submersion by the water discharged

from "Mickelwait Branch." This ridge comprises the farms of the objectors, who occupy and cultivate the same. The petitioners are the owners of the lowlands between such ridge and the bluffs to the east. The engineering project proposed is to conduct this water between dikes beginning at the mouth of the "Mickelwait Branch" and extending southwesterly and westerly towards the Missouri River by a short course. Near the dividing line between the ridge and the lowlands to the east thereof, and about 10,000 feet from the starting point of the dikes, is Jackson Slough, a body of water covering 70 or 80 acres of ground. On the west side of the ridge and about 3,000 feet westerly from Jackson Slough is the head of Haynie Slough. This is a very large body of stagnant water, and extends from that point to the Missouri River, a distance of 109,000 feet. It is proposed to conduct the water between dikes into and through the Jackson Slough, and across the ridge by means of a ditch, and thereby into the Haynie Slough. The elevations are such as to render the project feasible up to this point. The part of the project which the trial court found to be impossible was to conduct the water out of the Haynie Slough. This slough forms a constant body of water, which is on a substantial level with the Missouri River. Its water supply consists of the surface drainage from the surrounding higher lands, and of the backwater of the Missouri River. The water discharged by the "Mickelwait Branch" has not heretofore entered this slough. To divert this water from its present course, and to carry it into the Haynie Slough, and no farther, would simply result in a redemption of the lands east of the ridge and in a submergence of the lands west of the ridge, by transferring this water from one side of the ridge to the other. The question presented to the trial court and now presented to us is wholly one of fact, and is largely a question of engineering. No question of law is presented, and no claim of illegality of any kind is contended for by either side. The case has been submitted largely upon the testimony of engineers, testifying on each side. The trial court reached the conclusion that the proposed project was an impossible one. Our reading of the record brings us to the same conclusion. A detailed discussion of the evidence within the proper limits of an opinion will not be practicable. We are under the further disadvantage,

for the purpose of such discussion, that no plat in reduced size has been furnished to us. The original plat used upon the trial has been certified to us, but this is too large and cumbersome for the purpose of an opinion. The fact question has been thoroughly debated pro and con in the briefs of counsel. The trial court filed a lengthy and well considered opinion, setting forth the reasons for his conclusion. We content ourselves, therefore, with this announcement of our substantial agreement with the analysis of the evidence as made by the trial judge.

The order of the district court is, accordingly, affirmed.— *Affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.